UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kevin Charbono

    v.                                   Case No. 13-cv-471-SM
                                                                                  Opinion No. 2014 DNH 204
Lawrence P. Sumski,
Chapter 13 Trustee


**O R D E R**

The debtor in this Chapter 13 bankruptcy proceeding, Kevin Charbono, appeals an order of the bankruptcy court imposing a fine of $100.00 against him as a sanction for failing to deliver a copy of his tax return to the Trustee within the time allowed under the terms of his confirmed plan. Charbono raises a number of objections. First, he says the fine was, in substance, a criminal contempt sanction, which the bankruptcy court lacked authority to impose. Next, he claims the sanction was imposed without first affording him the due process required. And, finally, he asserts that the bankruptcy court's apparent policy of routinely imposing such sanctions is unsustainable. The Trustee counters that the bankruptcy court is plainly authorized to impose reasonable ad hoc penalties to enforce its own orders, the imposed sanction was reasonable under the circumstances, and it ought to be affirmed.

**Standard of Review**

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees issued by the bankruptcy court. 28 U.S.C. § 158(a)(1). The bankruptcy court's legal rulings are reviewed de novo, but its factual findings are entitled to deference and will not be overturned unless clearly erroneous. In re SW Boston Hotel Venture, LLC, 748 F.3d 393, 402 (1st Cir. 2014). Interpretations of governing statutes are legal rulings, but the bankruptcy court's application of a legal ruling to the facts "presents a mixed question of law and fact that [is] review[ed] for clear error unless its analysis was infected by legal error." Id. (internal quotation marks omitted).

**Background**

Kevin Charbono filed a voluntary bankruptcy petition on June 13, 2012. Under the local rules of the bankruptcy court, Charbono was required to file his Chapter 13 plan on Local Bankruptcy Form ("LBF") 3015-1A. See LBR 2015-1. That form includes the following provision: "**Duty to Provide Tax Returns**: The Debtor has an ongoing obligation to provide a copy of each federal income tax return (or any request for extension) directly to the Trustee within seven days of the filing of the return (or

any request for extension with the taxing authority.)"  LBF 3015-1A, II, A.

     Charbono's Chapter 13 plan was confirmed on August 21, 2012, making it an order of the court.  Beginning in April of 2013, then, Charbono was obligated by court order to provide the Trustee with a copy of his tax return, or any request for a deadline extension, within seven days of its filing.  In January of 2013, the Trustee sent a letter to Charbono specifically requesting a copy of his 2013 tax return when it was filed.  In April, Charbono's wife, on his behalf, filed a request with the Internal Revenue Service for an extension of time to file his federal tax return, but a copy was not provided to the Trustee within seven days, as required by the confirmed plan.

     On June 13, 2013, the Trustee moved the court to dismiss Charbono's bankruptcy case and to sanction him by imposing a fine of $200.00 for failing to comply with a material requirement of the confirmed plan.  Charbono objected to the motion.  A hearing was held before the bankruptcy judge on September 20, 2013.  Prior to the hearing, Charbono finally provided the Trustee with a copy of his request for an extension which, at that point, the

IRS had granted.  The tax return filing deadline had been extended to October 15, 2013, well after the hearing date.

Counsel for Charbono argued that dismissal or imposition of a sanction would be inappropriate, because Charbono did comply with the requirement by providing the Trustee with a copy of his request for an extension, albeit late.  A sanction imposed following compliance, counsel argued, would necessarily amount to punishment, and not coercion, so would constitute a criminal contempt sanction, rather than a civil contempt sanction.  The Trustee countered that a sanction should be imposed, because failure to comply with the tax return requirement within the time allowed is "sanctionable behavior."  (The Trustee also expressed collateral concerns arising from the fact that the same sanction had routinely been imposed in "hundreds" of other late-filing cases with identical facts; he feared having to refund those fines if a different decision were made in Charbono's case.)

The bankruptcy judge noted that the term requiring debtors to provide tax return information to the Trustee was based on <u>In re Michaud</u>, 399 B.R. 365 (Bkrtcy. D.N.H. 2008).  The bankruptcy judge further explained that the "policy" of imposing fines for failure to comply with the tax return filing requirement was

4

intended as a less serious alternative to dismissing Chapter 13 cases under the provisions of 11 U.S.C. § 1307(c).[1]  The judge noted that in other districts Chapter 13 cases were routinely dismissed for failure to comply with the terms of a confirmed plan — a practice that burdened debtors, trustees, and the court in that in such cases trustees must seek compliance, debtors must first comply with the filing requirement and then move the court to vacate the order of dismissal and reinstate the case, and the court must then devote time and attention to routine matters that should not have arisen in the first place.  The bankruptcy judge characterized the alternative lesser sanction as an effort "to get people's attention," and obtain compliance, thereby avoiding a waste of resources and facilitating the efficient management of bankruptcy proceedings.

The bankruptcy court issued its order on September 24, 2013.  The court denied the Trustee's motion to dismiss the case, but subject to certain terms.  Charbono was required to deliver a

---

[1] Title 11 U.S.C. § 1307(c) provides, in relevant part: "Except as provided in subsection (e) of this section, on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including — . . . (6) material default by the debtor with respect to a term of a confirmed plan."

copy of his filed tax return, and any excess tax refund he received, to the Trustee on or before November 15, 2013. He was also sanctioned for having failed to timely comply with the tax return production requirement. The court imposed a $100.00 fine, to be paid to the Trustee on or before January 15, 2014. The order provided that if Charbono failed to comply with its provisions and the Trustee filed an affidavit asserting that failure, the case would then be dismissed as allowed under the Bankruptcy Code. Charbono appealed on October 25, 2013.

### Discussion

On appeal, Charbono challenges the imposed sanction on grounds that: 1) it amounts to a fine in the nature of a criminal contempt sanction, which the bankruptcy court lacked jurisdiction to impose; 2) the sanction was imposed without affording the process required by Federal Rule of Criminal Procedure 42(a) related to criminal contempt; and 3) the bankruptcy court's sanction "policy" was adopted in the absence of any rule-making processes. The Trustee reiterates that Charbono was required by the confirmed plan to provide information about his tax return, which he failed to do within the time allowed by the plan. And, says the Trustee, because the Bankruptcy Court could dismiss a case for a material default by a debtor with respect to a term of

the confirmed plan, under the authority conferred by 11 U.S.C. § 1307(c), the bankruptcy court may certainly impose a lesser sanction of a fine, under the authority conferred by 11 U.S.C. § 105, in lieu of dismissing the case.

    A.   <u>Criminal Contempt Sanction</u>

Sanctions imposed for civil contempt are coercive in nature. They are meant to force the contemnor to comply with the court's order. <u>In re Grand Jury Proceedings</u>, 744 F.3d 211, 214 (1st Cir. 2014). Therefore, civil contempt sanctions "are necessarily limited to the period in which the contemnor can unlock the figurative prison door by purging himself of contempt." <u>Id.</u> In contrast, sanctions for criminal contempt are meant to punish the contemnor and to vindicate the authority of the court. <u>United States v. Henry</u>, 519 F.3d 68, 72-73 (1st Cir. 2008). Fines imposed for civil contempt "are remedial, designed primarily to coerce an offending party into prompt compliance with a judicial mandate. Once the contemnor comes into compliance, the contempt is purged and no further fines are incurred." <u>United States v. Kouri-Perez</u>, 187 F.3d 1, 7 n.2 (1st Cir. 1999). Fines for criminal contempt, however, assess "a one-time penalty for past disobedience of a court order." <u>Id.</u>

It is undisputed that Charbono failed to timely provide the Trustee with a copy of his request for an extension to file his tax return. But, by the time of the hearing, and before the bankruptcy court's sanction order was issued, Charbono had substantially complied — he provided the required information to the Trustee, albeit late. Given the bankruptcy judge's discussion with counsel and the Trustee at the hearing, it seems clear that everyone understood that the fine imposed was meant as punishment for Charbono's past failure to timely comply with the confirmed plan's requirements. And, unlike a remedial civil contempt sanction, the fine imposed was based upon a fixed amount, here $100.00, and not a continuing or escalating amount pending compliance.

The fine imposed in this case has many of the attributes of a criminal contempt sanction, and none of a civil contempt sanction. The bankruptcy court did not specifically address its authority to impose criminal contempt sanctions, though the issue was argued at the hearing by both Charbono's counsel and the Trustee.[2] On appeal, Charbono again focuses on his claim that

---

[2] The bankruptcy judge explained that the court's policy of imposing fines under such circumstances had been implemented as a means of coping with the large volume of cases, leading to backlogs.

the bankruptcy court is without legal authority to impose a criminal contempt sanction, and the Trustee again counters that the bankruptcy court may impose a criminal contempt sanction under § 105(a), arguing that the court's "internal office policy" of imposing fines, rather than dismissing cases or ignoring non-compliance, should be construed as an appropriate means of enforcing court orders.

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105(a) authorizes bankruptcy courts to take action "within the confines of the Bankruptcy Code;" it does not, however, allow action that the Code prohibits. See Law v. Siegel, 134 S. Ct. 1188, 1194-95 (2014). Courts currently disagree about whether § 105(a) authorizes bankruptcy courts to impose criminal contempt sanctions. See, e.g., In re Bradley, 588 F.3d 254, 266 (5th Cir. 2009); In re Dyer, 322 F.3d 1178, 1193 (9th Cir. 2003) (citing cases); In re Ragar, 3 F.3d 1174, 1179 (8th Cir. 1993). But the Court of Appeals for the First Circuit has suggested that such authority does exist. See United States v. Mourad, 289 F.3d 174, 178-79 (1st Cir. 2002); accord In re Nosek, 544 F.3d 34, 43 n.8 (1st Cir. 2008). The metes and

bounds of § 105(a) need not be determined here with respect to criminal contempt powers, however, because even if the bankruptcy court was authorized to impose a criminal contempt sanction, it did not purport to do so and, therefore, it did not follow the required process for doing so.[3]  But that is of little importance to the outcome because the bankruptcy judge acted well within his inherent authority to impose the sanction he did.

---

[3]  18 U.S.C. § 401(3) provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."  To support criminal contempt under § 401(3), "the government must prove beyond a reasonable doubt that the defendant willfully violated a lawful order of reasonable specificity."  Mourad, 289 F.3d at 180; see also In re Webb, 308 B.R. 357, 359-60 (Bankr. E.D. Ark. 2004).  A criminal contempt sanction may be imposed only in strict compliance with the requirements of Federal Rule of Criminal Procedure 42(a).  United States v. Burgos-Andujar, 275 F.3d 23, 31 (1st Cir. 2001).

   The Rules of Criminal Procedure provide that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice" that is provided to the person in open court "in an order to show cause, or in an arrest order."  The notice must include the time and place of trial, allow the defendant reasonable time to prepare a defense, and "state the essential facts constituting the charged criminal contempt and describe it as such."  Fed. R. Crim. P. 42(a)(1).  The court must also "request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney."  Fed. R. Crim. P. 42(a)(2).  Further, a defendant charged with criminal contempt is entitled to a jury trial.  Fed. R. Crim. P. 42(a)(3).

As the Court of Appeals has explained, court-imposed sanctions need not be strictly categorized as falling within either "civil contempt" or "criminal contempt."  "Thus, to say that the sanctions imposed below are punitive in nature is not to suggest that they are tantamount to de facto criminal contempt adjudications."  Kouri-Perez, 187 F.3d at 8.  "[W]e reject the contention that the sanction imposed . . . necessarily amounted to an adjudication of criminal contempt simply because it was not a civil contempt sanction."  Id. at 9 (citing Chambers v. NASCO, 501 U.S. 32, 46 (1991) ("The imposition of inherent power sanctions . . . vindicat[es] judicial authority without resort to the more drastic sanctions available for contempt."))  As in Kouri-Perez, here the pertinent distinction is between punitive contempt sanctions and punitive non-contempt sanctions.

The bankruptcy court, like the district court, may exercise its "inherent power" in performing its case-management function. See e.g., In re Sheridan, 362 F.3d 96 (1st Cir. 2004); In re Nosek, 544 F.3d 34 (1st Cir. 2008).  The court's inherent authority and implicit powers "include the judicial authority to sanction counsel [and litigants] for litigation abuses which threaten to impugn the . . . court's integrity or disrupt its efficient management of the proceedings.  Kouri-Perez, 187 F.3d

11

at 7 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980) ("The power of a court over members of its bar is at least as great as its authority over litigants."))

Indeed, "[i]n considering appropriate sanctions for . . . misconduct, . . . the [courts have] an array of options, ranging from criminal contempt to non-contempt measures." Kouri-Perez, 187 F.3d at 8. And, as in the present case, "[f]requently, there will be sound grounds for not invoking the court's criminal-contempt power, especially since its potency necessitates that it be used with restraint and discretion." Id. (citing Chambers, 501 U.S. at 44, Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995)). "Thus, the criminal contempt power is to be reserved for conduct that bespeaks a criminal mens rea (i.e. intentional or reckless conduct) and has been proven beyond a reasonable doubt, whereas non contempt sanctions normally suffice in circumstances involving less culpable states of mind." Kouri-Perez, 187 F.3d at 8.

In this case, the bankruptcy judge fully appreciated that Charbono's failure to comply with the terms of his confirmed plan was misconduct far less culpable in nature than that warranting a criminal contempt sanction. He appropriately exercised his

inherent authority, after providing the debtor with a hearing, to impose a modest sanction for a modest transgression — a sanction meant both to punish and to vindicate the court's integrity, as well as its interest in maintaining an efficient case management system.

Finally, the bankruptcy court's exercise of its inherent authority did not contravene the Code's requirements. It is true that § 1307(c)(6) empowers a bankruptcy judge to dismiss a case in the event of a material default by a debtor with respect to a term of a confirmed plan, but that enforcement option is discretionary. Nothing in the law compels dismissal on every occasion of material default by a debtor. The bankruptcy court is statutorily empowered to dismiss, or convert, but it is not compelled to do either — it may do nothing, or it may exercise its inherent authority to impose a lesser sanction for failure to comply with a court order. The bankruptcy court's inherent authority to manage its docket, and sanction counsel or litigants in aid of that authority, and for minor or modest transgressions, is supplemental to and not inconsistent with the dismissal power under § 1307(c). See e.g., Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007); In re Hutchins, 480 B.R. 374, 387 (Bankr. M.D. Fla. 2012) ("Dismissing or converting a case for

13

a material default under § 1307(c)(6) is a discretionary matter and is appropriate when a debtor is unable to cure a default and the plan cannot be modified to make completion feasible.") (citation omitted).

So, while conduct amounting to a material default with respect to a confirmed plan obligation might well result in dismissal or conversion under § 1307(c)(6), the bankruptcy court is not required to dismiss.  Nor is the court precluded from imposing lesser sanctions, under its inherent authority, aimed at obtaining compliance and insuring efficient management of its proceedings.  Here, the imposed sanction was not one imposed for criminal contempt; it fell comfortably within the bankruptcy court's inherent powers; and it was imposed after a fair hearing at which Charbono was afforded a full opportunity to present his position on the merits and in mitigation.[4]  There was no error.

---

[4] Whether the bankruptcy court's "policy" of routinely imposing sanctions for a specified class of violations of orders is or is not valid is not a question properly presented in this case.  Charbono was sanctioned for his individual violation, and after a full hearing, at which he could have shown that he in fact had not committed the violation.  Alternatively, he was able to offer evidence and argument in mitigation.  Moreover, it seems doubtful that the bankruptcy court could not establish a standardized sanction for standard anticipated violations of standard court orders that do not rise to the level of criminal contempt of court, particularly when individualized hearings are readily available.  But those are issues for another day and a different case.

**Conclusion**

For the reasons set forth above, the bankruptcy court's order, issued on September 24, 2013, imposing a fine on the debtor in the amount of $100.00 is affirmed.

**SO ORDERED.**

				Steven J. McAuliffe
				United States District Judge

September 30, 2014

cc: Michelle Kainen, Esq.
    Lawrence P. Sumski, Esq.
    Geraldine L. Karonis, Esq.